# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| MARK DEBOWER,<br><br>    Plaintiff,<br><br>vs.<br><br>WENDY DAWN SPENCER; WAGNER TRUCKING, INC.; and SKEETER EXPRESS SPECIALIZED, LLC;<br><br>    Defendants. | Case No. 21-CV-2010-KEM<br><br>**MEMORANDUM OPINION AND ORDER** |

_____

Currently pending before the court is Defendants' motion for partial summary judgment. Doc. 22. I **grant** the motion (Doc. 22).

## I.   BACKGROUND[1]

Early in the morning (5:12 a.m.) on October 30, 2017, Plaintiff Mark DeBower and Defendant Wendy Dawn Spencer were involved in a motor vehicle accident. Pl. SOF ¶ 77; Def. Resp. SOF ¶ 77. Spencer, driving a semi-tractor trailer, exited the four-lane divided highway and intended to go straight from the off-ramp to the on-ramp, where she planned to stop on the shoulder to make a pot of coffee. Pl. App. 14. DeBower was driving along the intersecting two-lane highway, and the accident occurred when Spencer tried to cross that highway to reach the on-ramp. *See* Pl. App. 20. Law enforcement

---

[1] "Def. SOF" refers to Defendants' Statement of Facts filed at Doc. 22-1, "Pl. Resp. SOF" refers to Plaintiff's Response to Defendants' Statement of Facts filed at Doc. 33-1; "Pl. SOF" refers to Plaintiff's Statement of Facts filed at Doc. 33-2; and "Def. Resp. SOF" refers to Defendants' Response to Plaintiff's Statement of Facts filed at Doc. 37-1. "Def. App." refers to Defendants' Appendix filed at Doc. 22-3, and "Pl. App." refers to Plaintiff's Appendix filed at Doc. 33-3.

cited Spencer for failing to yield upon entering a through highway. Pl. SOF ¶ 75; Def. Resp. SOF ¶ 75. Blood alcohol content (BAC) and drug testing performed on Spencer at the hospital at 10:25 a.m. was negative. Pl. SOF ¶ 78; Def. Resp. SOF ¶ 78.

At the time of the accident, Defendant Skeeter Express Specialized, LLC (Skeeter LLC), employed Spencer. Pl. Resp. SOF ¶ 9; Def. App. 14, 20; Pl. App. 5-6, 108; Doc. 7. Skeeter also owned the semi truck. *Id.* Skeeter leased the truck and driver to Defendant Wagner Trucking, Inc. *Id.* Both Skeeter LLC and Wagner Inc. are companies owned and controlled by Jeremy Wagner, and the leasing arrangement between the two existed for tax purposes. *Id.* Both companies are located in the same office. *Id.* [2]

DeBower brought suit against Spencer, Skeeter LLC, and Wagner Inc., alleging negligence and other claims. Doc. 3. DeBower's direct negligence claims against Skeeter LLC and Wagner Inc. are premised on a theory that the companies negligently hired, trained, and supervised Spencer and negligently leased the semi truck. *Id.* Defendants now move for summary judgment on just the direct negligence claims against Skeeter LLC and Wagner Inc. Doc. 22.

Wagner testified to the general procedures Skeeter LLC and Wagner Inc. employ when hiring a driver. Def. App. 14-16. First, they obtain both a report of the driver's roadside inspections from the Department of Transportation (DOT) and a record of any moving violations. *Id.* The driver fills out an application and lists their work history, which is verified by sending a questionnaire to the driver's former employers. *Id.* Wagner testified that they do not ask whether a former employer "recommend[s]" a driver, but they do "verify their miles, safety, the use of drugs, [and] if they're drug compliant." Def. App. 15. The driver also undergoes a drug test and a driving test.

---

[2] There is some evidence that Wagner Inc. employed Spencer—Spencer applied to work for Wagner Inc., not Skeeter LLC; a Wagner. Inc. employee performed the pre-employment investigation into Spencer; Spencer drove for Wagner Inc. and no written lease existed between Wagner. Inc. and Skeeter LLC; and Defendant's Statement of Facts state "Spencer was hired by Wagner [Inc.] and Skeeter [LLC] on or about March 21, 2017." Def. SOF ¶ 9. I recite Plaintiff's version of the facts, the non-moving party, at this stage in the case.

Def. App. 14, 16. Spencer testified that the driving test lasted for about an hour. Pl. App. 11; Pl. SOF ¶ 16; Def. Resp. SOF ¶ 16. In addition, Spencer had had a medical examination on September 26, 2016, that qualified her for a two-year driving certificate (as set forth in the federal regulations). Def. SOF ¶ 14; Pl. Resp. SOF ¶ 14.

Here, Spencer filled out an application in March 2017 (for Wagner Inc.) that asked for her employment history for the last ten years. Def. App. 29-34. Shalyn Olson, a Wagner Inc. employee, sent employment verification questionnaires to the three most recent employers listed on the application: CMT (Spencer's employer from October 2016 to March 2017), James Clark (Spencer's employer from January to sometime later in 2016), and Parke Cox (Spencer's employer from August to November 2015) (the fourth most recent employer listed was Wagner Inc., who Spencer reported working for previously from 2012 to 2014). Def. App. 30-32, 35, 64, 66, 68-69, 85-86. Spencer did not list prior employment with Progressive Logistics, and there is no evidence Wagner Inc. sent an employment-verification questionnaire to them, even though the DOT report showed Spencer was working for Progressive Logistics on December 24, 2015. Def. App. 85-86.

In the questionnaire filled out by CMT, CMT confirmed Spencer's employment dates and indicated Spencer had no accidents or failed drug or alcohol tests during her employment. Def. App. 64-65. Under "reason for leaving" employment, CMT checked boxes indicating both "discharged" and "resignation" and hand wrote in the margin, "mutual." Def. App. 64. The James Clark and Parke Cox questionnaires were completed electronically. Both companies stated Spencer quit and was not terminated, and under "eligible for rehire," indicated "review." Def. App. 66, 69. They noted no accidents or failed drug or alcohol tests. Def. App. 66-70. Under "miles per week," Parke Cox answered "2500+," while James Clark left the question blank. Def. App. 66, 69.

3

The moving-violations record showed one Operating While Intoxicated (OWI) conviction for Spencer, based on Spencer driving with a BAC of .17 on November 7, 2008. Pl. SOF ¶¶ 20-21; Def. Resp. SOF ¶¶ 20-21; *see also* Def. App. 71. As a result, Spencer's Utah driver's license was revoked for 180 days and she was denied or disqualified from having a commercial driver's license for one year. *Id.* On her employment application, Spencer answered "no" in response to questions asking whether she had ever been denied a license or had her license suspended or revoked. Def. App. 33. She also stated in the employment-history section that she worked for a particular trucking company in 2008 and 2009 and left due to a "personal reason." Def. App. 32.

In terms of training, Wagner testified that they do not train inexperienced people to drive semi trucks; instead, they hire people who are "trained before they get here for the most part." Def. App. 17. He noted they follow guidelines from the insurance company regarding age and experience. *Id.* Wagner testified that they primarily provide training on handling and loading equipment, as his companies haul equipment and oversized loads (which even experienced drivers may not be used to). *Id.* At the time she was hired in March 2017, Spencer had been driving a semi truck on and off since 1989, including a previous stint with Wagner Inc. Def. SOF ¶ 2; Pl. Resp. SOF ¶ 2; Def. App. 32. She was provided with a company policy manual and a copy of the federal regulations. Def. SOF ¶ 10-12; Pl. Resp. SOF ¶ 10-12; Pl. App. 11-12. Spencer testified that she watched three safety videos as part of orientation (some of which were on securing cargo rather than driving), and she watched monthly safety videos. Def. App. 24-25; Pl. App. 69.[3]

---

[3] Plaintiff cites to the three orientation videos in his response to Defendant's Statement of Facts, and Plaintiff's Appendix contains a page stating, "placeholder for 3 videos on USB stick." *See* Pl. Resp. ¶ 15; SOF App. 57. The court never received the videos. When the clerk's office reached out to Plaintiff's attorney about the video exhibits, Plaintiff's attorney explained that at one point they considered submitting the videos as part of the record, thus the placeholder, but then they decided not to submit the video exhibits.

4

## II.   DISCUSSION

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant [a motion for] summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." For the plaintiff to avoid summary judgment, sufficient evidence must exist "on which the jury could reasonably find for the plaintiff." *Olmsted v. Saint Paul Pub. Sch.*, 830 F.3d 824, 828 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The court "view[s] the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Soo Line R.R. Co. v. WernerEnters.*, 825 F.3d 413, 418 (8th Cir. 2016) (quoting *Bishop v. Glazier*, 723 F.3d 957, 960-61 (8th Cir. 2013)).

At issue is whether Skeeter LLC and Wagner Inc. are entitled to summary judgment on DeBower's claims for negligent hiring, training, supervision, and leasing, which the parties agree arise under Iowa state law. Federal courts are "bound by the decisions of the [Iowa] Supreme Court regarding issues of substantive state law." *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005). "If the [Iowa] Supreme Court has not yet addressed a particular issue, [the court] may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." *Id.* (quoting *Bass v. Gen. Motors Corp.*, 150 F.3d 842, 846-47 (8th Cir. 1998)). "Decisions from [Iowa's] intermediate appellate court . . . are 'particularly relevant,' and must be followed when they are the best evidence of [Iowa] law." *Id.* (quoting *Knouse v. Gen Am. Life. Ins. Co.*, 391 F.3d 907, 911-12 (8th Cir. 2004)).

### A. Negligent Hiring

Under Iowa law, "an employer has a duty to exercise reasonable care in hiring individuals, who, because of their employment, may pose a threat of injury to members of the public." *Godar v. Edwards*, 588 N.W.2d 701, 709 (Iowa 1999). To recover on a negligent-hiring claim, the plaintiff must prove:

> (1) that the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time of hiring;
> (2) That through the negligent hiring of the employee, the employee's incompetence, unfitness, or dangerous characteristics . . . caused the resulting injuries; and
> (3) that there is some employment or agency relationship between the tortfeasor and the defendant employer.

*Id.* at 708-709 (quoting **27 Am.Jur.2d *Employment Relationship* § 473**, at 913 (1996)); *accord* **Iowa Model Civil Jury Instruction 730.5**.

Plaintiff suggests that Iowa law no longer requires proof of proximate cause for negligence claims. In *Thompson v. Kaczinski*, 774 N.W.2d 829, 837-39 (Iowa 2009), the Iowa Supreme Court, following the Restatement (Third) of Torts, began "refer[ring] to the concept of proximate cause as 'scope of liability'" instead. The court in *Thompson* also held (overruling prior cases) that the "scope of liability" test did not include whether a defendant's conduct was a "substantial factor in bringing about the harm"; the substantial-factor test went to actual causation instead. *Id.* at 836-37, 839. The court noted the scope-of-liability test required analysis of "risks that made the actor's conduct tortious" and acknowledged the similarity between this recitation of the rule and prior cases that spoke in terms of foreseeability. *Id.* at 838-39.

> Properly understood, both the risk standard and a foreseeability test exclude liability for harms that were sufficiently unforeseeable at the time of the actor's tortious conduct that they were not among the risks—potential harms—that made the actor negligent. When scope of liability arises in a negligence case, the risks that make an actor negligent are limited to foreseeable ones, and the factfinder must determine whether the type of harm that occurred is among those reasonably foreseeable potential harms that made the actor's conduct negligent.

*Id.* (cleaned up) (quoting **Restatement (Third) of Torts: Liability for Physical Harm § 29 cmt. j,** at 594 (2005)). The Iowa Supreme Court has recognized post-*Thompson* that "[w]ith respect to negligent hiring and supervision, '[t]he core predicate for imposing liability is one of foreseeability.'" *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 40 (Iowa 2018) (quoting *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002)).

6

Defendants argue that they are entitled to summary judgment because Plaintiff has offered no proof of the standard of care or its breach. Defendants rely on *Alcala v. Marriot International, Inc.*, 880 N.W.2d 699, 708-10 (Iowa 2016), in which the Iowa Supreme Court held that the trial court erred in submitting a negligent-training claim to the jury in a slip-and-fall case when the plaintiff offered no testimony (expert or lay) "as to the standard for training for the job at issue," nor testimony "as to how the training fell short." The court noted "[i]t is axiomatic that proof of the applicable standard of care and its breach are required to recover in tort." *Id.* at 708. The court rejected the plaintiff's argument that the jury could find the employer breached "a duty to train [its employee] by connecting these dots: there was ice on the sidewalk; therefore, [the employee] did not apply deicer properly; therefore, [the employer] did not train [the employee] properly." *Id.* at 709. To adopt this theory would allow employers to "be sued for negligent training whenever there is an avoidable accident." *Id.*

Plaintiff responds that Wagner's testimony and federal regulations establish the standard of care. Plaintiff notes Wagner generally testified that trucking companies must exercise reasonable care in hiring drivers. Def. App. 14. Plaintiff points to Wagner's testimony that when hiring, "[w]e have to verify their work history." Def. App. 14. Plaintiff notes that Olson sent employment questionnaires to only three of Spencer's past employers, even though the employment application asked Spencer to list her employers for the last ten years. Defendant responds that DOT regulations require only "[a]n investigation of the driver's safety performance history with [DOT-]regulated employers during the preceding three years." **49 C.F.R. § 391.23(a)(2)**. But as Plaintiff argues, a jury could find that Spencer was employed by Progressive Logistics in December 2015, within three years of when she started working for Skeeter LLC and Wagner Inc. (in March 2017), and that Skeeter LLC and Wagner Inc. did not "investigat[e]" Spencer's employment with Progressive Logistics in any way.

7

Plaintiff also argues that Skeeter LLC and Wagner Inc. should have verified Spencer's miles. Plaintiff relies on Wagner's testimony that they do not ask whether former employers "recommend" an employee, "[b]ut we ask for to [sic] verify their miles, safety, the use of drugs, if they're drug compliant, all that stuff." Def. App. 15. Later, Wagner further explained:

> We make sure they've got enough miles on the road, experience, that type of stuff. Who they've worked for. The [DOT report] shows a lot. If they have -- we turn down many people who want to work here, we turn them down because they have so many violations on their [DOT] report . . . .

Def. App. 17. The form sent to CMT asked for CMT to verify the kind of motor vehicle Spencer drove (a semi-tractor trailer) and her dates of employment, but it did not ask CMT to list the number of miles Spencer drove. Def. App. 64-65. The electronic records requests sent to James Clark and Parke Cox included a space for the prior employers to list miles driven per week, but only Parke Cox responded to this question ("2500+"). Def. App. 66, 69. Both verified, however, Spencer's dates of employment and that she drove a semi-tractor trailer. *Id.*

Plaintiff also argues that Spencer should not have been hired based on omissions and falsehoods on her employment application. Spencer did not list her prior employment with Progressive Logistics on her employment application. She also denied ever having her license suspended or revoked, even though her driver's license was revoked for 180 days in 2008 due to an OWI. Plaintiff also suggests a breach of the duty of care because CMT noted Spencer was discharged (CMT checked both that Spencer was discharged and that she resigned, noting "mutual"), and because James Clark and Parke Cox indicated "review" in response to a question asking whether Spencer was eligible for rehire. Plaintiff cites no testimony concluding that this evidence made Spencer unfit to drive, instead suggesting the evidence as a whole creates a fact issue for the jury to determine whether Defendants exercised reasonable care in hiring.

In sum, Plaintiff argues Defendants failed to exercise reasonable care in hiring Spencer based on:

8

- Defendants' failure to verify Spencer's past employment with Progressive Logistics, in violation of a federal regulation;
- Defendants' failure to verify Spencer's past employment with trucking companies for which Spencer had not worked for more than seven years at the time she applied;
- Defendants' failure to specifically verify the number of miles Spencer drove per week for her past employers (even though they verified that Spencer had at least a year of experience driving a semi, in addition to Spencer's years working for Wagner Inc.);
- Spencer's failure to disclose on her application that she had worked for Progressive Logistics in 2015 and that she had her driver's license suspended as the result of an OWI in 2008; and
- Three of Spencer's past employers declining to state they would rehire Spencer.

I agree with Defendants that this evidence does not create a genuine dispute of material fact that they knew, or in the exercise of ordinary care should have known, of Spencer's unfitness to be a driver at the time of hiring. Plaintiff has offered no evidence of what, if anything, additional information from Spencer's past employers would have revealed. *See Est. of Presley v. CCS of Conway*, No. 3:03CV-117-H, 2004 WL 1179448, at *5 (W.D. Ky. May 18, 2004) ("Mere proof of the failure to investigate a potential employee's background is not sufficient to establish an employer's liability for negligent hiring." (quoting ***Interim Personnel of Cent. Va., Inc. v. Messer***, 559 S.E.2d 704, 707 (Va. 2002))).[4] In addition, it is undisputed that Spencer has worked as a semi-truck driver on and off for decades, so if Defendants had specifically verified Spencer's miles, she would not have been shown to be inexperienced. Although Spencer did not disclose her prior OWI on her application, Wagner and Olson learned of it anyway

---

[4] By this same principle, even if a jury could find Spencer LLC did no investigation into Spencer prior to hiring (finding that the actions were performed by Wagner. Inc.), no evidence establishes Spencer should not have been hired based on her background. *See **Doyle v. Tama Cnty., Iowa***, No. C98-0024, 1999 WL 33655734, at *12 (N.D. Iowa Mar. 16, 1999) ("Even if defendant's investigation into [the employee's] background was not all that it could have been, [plaintiff] has demonstrated nothing in [the employee's] personal or work history that would have put defendants on notice as to [the employee's] unfitness.").

9

(through the background check), and they still decided to hire Spencer. Plaintiff has offered no testimony or other evidence supporting that a reasonable trucking company should not hire drivers with a dated OWI (here, eight years). *See also, e.g.*, *id.* at *5-6 (holding that a driving under the influence conviction from twelve years prior to accident with plaintiff and two years prior to hiring could not form basis of negligent-hiring claim when the accident at issue did not involve the driver's use of alcohol). Similarly, there is no evidence that trucking companies should only hire drivers when their former employers recommend them for rehire—in fact, Wagner testified that they do not ask for recommendations as a matter of policy.

The cases cited by Plaintiff are distinguishable. In *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 35 (Tex. App. 2002), the driver for the defendant was intoxicated at the time of the accident that injured plaintiff. The driver had been working for the defendant for only a few months. *Id.* Prior to hiring, the defendant obtained an "AMS Driver Record Report," which showed no convictions or accidents in the last three years. *Id.* at 51. The defendant did not obtain a "Texas Department of Public Safety" report, which the plaintiff submitted in support of his claim, revealing an accident (with no resulting injury) a few months prior to hiring; an OWI charge two-and-a-half-years prior to hiring; five citations for driving without insurance (from more than six years prior); and dated OWI and methamphetamine-possession convictions (from more than ten years prior). *Id.* Thus, although the court noted the defendant had lied about his lack of criminal record on his employment application (as DeBower points out), it found "a fact issue concerning whether [defendant] exercised reasonable care in qualifying him as a driver" based on defendant's failure to obtain the Texas Department of Public Safety report or to conduct a criminal background check. *Id.* Here, Plaintiff has not pointed to any evidence that calls Spencer's ability to drive into question and that Defendants could have discovered through additional investigation.

In *TXI Transportation Co. v. Hughes*, 224 S.W.3d 870, 915 (Tex. App. 2007), *rev'd on other grounds,* 306 S.W.3d 230 (Tex. 2010), the driver lied about his

10

truck-driving experience on his application, stating he had six years' experience with no gaps in employment, rather than "three years of repeatedly interrupted experience." The defendant knew that the driver's employment-history section contained misinformation but failed to investigate further. *Id.* at 915. The court held there was sufficient evidence that the defendant breached its duty of care based on the defendant's testimony that "when a truck driver changes jobs every few months, his 'employability usually is not good'"; the defendant's testimony that it did not train the driver, instead relying on his experience; and the plaintiff's expert's testimony that the defendant failed to "further investigate or seek clarification" of the "false and incomplete information" in the driver's application and that "[w]hen his application came back like this, you let him go." *Id.* The court also held that a jury could find the driver's "lower-than-represented level of experience in driving a tractor-trailer and [the defendant's] consequent decision to not train [the driver] based on his misrepresented level of experience" proximately caused the plaintiff's injuries. *Id.* at 916. Here, Plaintiff points to no expert or other testimony opining that other truck companies would not have hired Spencer based on her background or the omissions and falsehoods in her employment application. Moreover, Plaintiff offers no evidence that Spencer has less experience than stated on her employment application—the record establishes that at the time of hiring, Spencer had been driving semi trucks on and off for twenty-five years.

A reasonable jury could not find for Plaintiff on the negligent-hiring claim. Accordingly, Defendants are entitled to summary judgment.

### B. Negligent Training

Upon hiring, Spencer was provided with a company policy manual and the federal regulations. Pl. App. 11-12; Def. SOF ¶ 10; Pl. Resp. SOF ¶ 10. She watched three videos as part of orientation (titled "Driving Techniques," "Seeing Hazards," and "Cargo Securement"), and she also testified to watching monthly safety videos. Def. App. 24-25; Pl. App. 69. Wagner testified:

> We're not a big company. We don't run any training deal. They're trained before they get here for the most part. Like mega fleets have their own training course. We're not allowed to hire those people. We have guidelines by the insurance company that they have to be a certain age and stuff, that they have the experience. They've been trained for the most part and we just fine tune them from here. . . .
>
> Like I said, we go over handling of equipment that they have, knowing what they have behind them. Our company doesn't just have vans that they close the door and go on the road. We have big objects on our trailers. They have to make sure it's loaded properly, secured properly, can you handle the equipment. You know, we've had people in the past come here and we've had them leave because they couldn't do that**.**

Def. App. 17.

Defendants argue that Plaintiff has provided no evidence of the "standard for training for the job at issue," nor how Defendants' "training fell short." *Alcala*, 880 N.W.2d at 710. I agree. The only standard-of-care evidence Plaintiff points to is Wagner's testimony and a federal regulation that requires trucking companies to have a "driver safety training/orientation program" in place. *See* Pl. App. 48. This evidence does not establish that Spencer LLC and Wagner Inc.'s orientation process, described above, failed to meet standards. Even in argument, the only specific additional training Plaintiff argues Defendants should have provided are additional ride-alongs after hiring—but again, neither Wagner's testimony nor the federal regulation cited by Plaintiff say anything about ride-alongs (nor what training or orientation is specifically required).

Plaintiff also argues that Defendants should have provided training or supervision to ensure that drivers stopped at truck stops for breaks, as opposed to pulling over onto the shoulder. But again, Plaintiff points to no evidence that this is the kind of training and supervision reasonable trucking companies provide. Plaintiff notes that some states prohibit stopping on the shoulder, but it is not prohibited by Iowa law or federal regulation.

Defendants are entitled to summary judgment on Plaintiff's negligent-training claim.

## C. *Negligent Supervision*

Plaintiff's main argument in support of the negligent-supervision claim rests on Defendants' failure to produce in discovery a bill of lading or dispatch records showing the load Spencer's truck was carrying at the time of the crash. Plaintiff argues that federal regulation requires bills of lading and for trucking companies to maintain records of bills of lading.[5] Without the bill of lading, Plaintiff argues he cannot establish whether the load was oversized (weighing more than 80,000 pounds) (which would subject the truck to additional federal regulations and state laws, including Iowa's prohibition on driving oversized loads earlier than a half hour before sunrise). Plaintiff suggests that he is entitled to a presumption that the load was oversized and that Defendants negligently supervised Spencer by allowing her to drive with an oversized load without a permit and during a time prohibited by state law.

Wagner testified that Wagner Inc. is an "open deck carrier" that hauls "equipment, oversized loads, [and] overweight loads," such as farm machinery and construction equipment, rather than a trucking company with "just . . . vans that [the driver] close[s] the door and g[oes] out on the road." Def. App. 17. He testified that not every load is oversized, however. *Id*. Spencer testified that at the time of the accident, she was carrying steel beams. Def. App. 27. When asked how much the trailer and load weighed, she responded that "we can't go over 80,000 pounds, gross weight pounds counting our truck and our trailer," so "I don't know, that day I could have probably weighed with those on probably 77, 78,000 gross altogether." *Id*. Plaintiff offers no evidence (such as his or the police officer's recollection) that Spencer carried something different on the day of the accident or that Spencer regularly carried oversized loads (which could have

---

[5] Plaintiff notes that federal regulation requires "records, reports, orders and tickets pertaining to weighting of freight" be maintained for three years; I note, however, that provision provides bills of lading need only be maintained for one year. *See* **49 C.F.R. § 379.3 & Appendix A**.

13

been proved from other bills of lading, which Plaintiff admits receiving in discovery up to October 7, 2017). *See* Pl. Resp. SOF ¶ 51.

I do not find Plaintiff is entitled to an adverse inference regarding the weight of the load. *See **Stevenson v. Union Pac. R.R. Co.***, 354 F.3d 739, 748-49 (8th Cir. 2004) (adverse inference as result of spoliation requires showing of bad faith and prejudice); *see also, e.g.*, **Shelton v. Gure**, No. 3:19-CV-00843, 2021 WL 2210989, at *4-7 (M.D. Pa. June 1, 2021) (declining to impose spoliation sanction based on violation of DOT regulations on record retention); **Mann v. Redman Van & Storage Co.**, No. CV 10-128-M-DLC, 2012 WL 1232024, at *5 (D. Mont. Apr. 12, 2012) (same), *aff'd,* 542 F. App'x 604 (9th Cir. 2013); **Ziemkiewicz v. R+L Carriers, Inc.**, 996 F. Supp. 2d 378, 391-93 (D. Md. 2014) (same; also noting spoliation argument raised at summary judgment was untimely).

As Plaintiff has set forth no evidence that the load was oversized, Defendants are entitled to summary judgment on Plaintiff's negligent-supervision claim that rests on Spencer's failure to have an oversized-load permit or driving at a time prohibited by state law.

### D. Negligent Leasing

Plaintiff argues that Skeeter LLC negligently leased the truck driven by Spencer to Wagner Inc. because no signed lease exists, in violation of federal regulation. Plaintiff also cites several other violations of the DOT regulations related to documentation. Plaintiff anticipates Defendants' lack-of-causation response, arguing that because Defendants lacked the proper paperwork for Spencer's truck, Defendants were prohibited from operating the truck. Thus, Plaintiff reasons, "[t]he crash, and Plaintiff's injuries, would not have happened except for Defendants' conduct in operating the semi in violation of the [DOT] leasing regulations." Doc. 33 at 37.

"Causation is a question for the jury, 'save in very exceptional cases where the facts are so clear and undisputed, and the relation of cause and effect so apparent to every

14

candid mind, that but one conclusion may be fairly drawn therefrom.'" *Thompson*, 774 N.W.2d at 836 (emphasis omitted) (quoting *Lindquist v. Des Moines Union Ry.*, 30 N.W.2d 120, 123 (1947)). Under the scope-of-liability test (discussed in the negligent-hiring section), "[a]n actor's liability is limited to those physical harms that result from the risks that made the actor's conduct tortious." *Id.* at 838 (quoting **Restatement (Third) of Torts § 29**, at 575). "[T]he risks that make an actor negligent are limited to foreseeable ones." *Id.* at 839 (quoting **Restatement (Third) of Torts § 29 cmt. j**, at 594). For example:

> [A] hunter return[s] from the field and hand[s] his loaded shotgun to a child as he enters the house. The child drops the gun (an object assumed for the purposes of the illustration to be neither too heavy nor unwieldy for a child of that age and size to handle) which lands on her foot and breaks her toe. Applying the risk standard . . . , the hunter would not be liable for the broken toe because the risk that made his action negligent was the risk that the child would shoot someone, not that she would drop the gun and sustain an injury to her foot.

*Id.* at 838 (citations omitted).

Here, that the truck lacked the proper paperwork, in violation of federal regulation, has no relation to the cause of the crash. A case cited by Plaintiff, *TXI Transportation*, is demonstrative. In that case, the plaintiff was involved in a traffic accident with a commercial truck driven by an undocumented alien. 306 S.W.3d at 234-34, 240-41. The plaintiff brought negligent-hiring and negligent-entrustment claims against the driver's employer, arguing that the defendant should have discovered that the driver used a fake Social Security card to obtain a commercial driver's license and was not authorized to work in the United States. *Id.* at 240. Both the Texas Court of Appeals and the Texas Supreme Court held that "even if [the defendant's] failure to screen, and thus its failure to discover [the driver's] inability to work in the United States, 'furnished [the] condition' that made the accident possible," the driver's "immigration status did not cause the collision." *Id.* at 241. The courts held "that neither [the driver's] status as an illegal alien or his use of a fake Social Security number to obtain a commercial driver's

15

license created a foreseeable risk that [he] would negligently drive the . . . truck." *Id.* at 241 (quoting *TXI Transp.*, 224 S.W.3d at 914).

Here, the lack of a signed lease and other paperwork did not create a foreseeable risk that Spencer would negligently drive the truck and cause an accident. Accordingly, Defendants are entitled to summary judgment on Plaintiff's negligent-leasing claim.[6]

### III. CONCLUSION

Defendants' motion for summary judgment (Doc. 22) is **granted**. Plaintiff's claims for negligent hiring, training, supervising, and leasing against Skeeter LLC and Wagner Inc. are dismissed.

Trial will proceed as scheduled on the direct negligence claim against Defendant Spencer, and the respondeat superior, strict liability, and statutory owner/lessor liability claims against Defendants Skeeter Express Specialized, LLC, and Wagner Trucking, Inc.

**IT IS SO ORDERED** this 19th day of October, 2021.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[6] Plaintiff also suggests that Defendants violated DOT regulations by failing to measure Spencer's BAC within two hours of the crash. It is unclear what theory of negligence Plaintiff argues this evidence is relevant to, but in any event, any violation does not meet the causation standard for the same reason as the lack of paperwork.

16

Case 6:21-cv-02010-KEM   Document 49   Filed 10/19/21   Page 16 of 16