**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| MARK DEBOWER,<br><br>Plaintiff,<br><br>vs.<br><br>WENDY DAWN SPENCER; WAGNER TRUCKING, INC.; and SKEETER EXPRESS SPECIALIZED, LLC;<br><br>Defendants. | Case No. 21-CV-2010-KEM<br><br>**MEMORANDUM OPINION AND ORDER** |

---

This case involves a motor vehicle collision between Plaintiff Mark DeBower and Defendant Wendy Dawn Spencer, who was driving a semi-tractor-trailer for Defendants Wagner Trucking, Inc., and Skeeter Express Specialized, LLC, at the time of the collision. Both parties have filed motions in limine and responses thereto, which were discussed at the Final Pretrial Conference. Docs. 43-46, 54, 57. Defendants indicated no objection to Plaintiff's motion in limine on the following matters, as long as the ruling applies with equal force to Plaintiff (who has no objection to that modification):

- Unrelated injuries, accidents, claims, suits, or settlements (3);
- Plaintiff's receipt or use of damages awarded in a prior action (4);
- Unrelated court proceedings, including Plaintiff's Operating While Intoxicated charges in 2001 and 2007 (5);
- Testimony and statements as to any party's veracity, credibility, or importance to the community (6);
- The comparative fault of nonparties (7);
- Any malpractice claim or related proceedings involving Plaintiff's treating physician (8);
- Any settlement offers (10); and
- The filing of the motion in limine (15).

Docs. 43, 45. Plaintiff indicated no objection to Defendants' motion in limine on the following matters:

- Reference to insurance coverage or Defendants' wealth (G);
- Evidence of liability insurance and settlement negotiations (H); and
- Evidence or testimony on injuries or damages not previously disclosed by Plaintiff (including punitive damages) (I).

Docs. 44, 46. I will discuss the remaining issues in turn.

## *I. PLAINTIFF'S MOTION IN LIMINE*

### *A. Reference to Medical Bills and Insurance Coverage (1) and Collateral Benefits (including Disability Insurance) (2)*

At the Final Pretrial Conference, Plaintiff indicated affirmatively for the first time that he is not seeking damages for past and future medical expenses or lost wages. As a result, he seeks to exclude evidence of medical bills and collateral benefits (including disability insurance), arguing that this evidence is irrelevant, unfairly prejudicial, and would confuse the jury. Defendants indicated no objection to exclusion of evidence related to collateral benefits (2).

Defendants argue that medical bills are relevant because they show the course and scope of treatment. As Plaintiff notes, this information can be gleaned from the medical records themselves. Defendants also argue that the fact that the bills were paid by Plaintiff's insurance company tends to show that he was not stressed out about medical bills, which is relevant to his mental damages. Plaintiff responds that unless DeBower "opens the door" by testifying about stress levels due to medical-bill concerns, the medical bills should be excluded from evidence. At the Final Pretrial Conference, I noted I tended to agree with Plaintiff's position.

Defendants cites one case in which a court held that medical bills were admissible, despite plaintiff not seeking to recover medical expenses based on those bills. The court

found medical expenses relevant to pain and suffering and "the inconvenience that [plaintiff] experienced because of [defendant's] negligence." ***Barkley v. Wallace***, 595 S.E.2d 271, 274 (Va. 2004). That case could perhaps be distinguished because *plaintiff* sought to introduce the bills in support of her pain-and-suffering damages, but she was not seeking to recover her medical expenses for those bills because they had been discharged in bankruptcy. ***Id.*** The majority of courts (including those in the Eighth Circuit) have held that when medical expenses are not at issue, medical bills are not relevant to pain-and-suffering damages and should be excluded. *See* ***Pinkett v. Dr. Leonard's Healthcare Corp.***, No. CV 18-1656 (JEB), 2021 WL 1634565, at *1-2 (D.D.C. Apr. 27, 2021) (collecting cases); ***Bridges v. Wal-Mart Stores E., LP***, No. CIV-19-213-G, 2021 WL 1579920, at *1 (W.D. Okla. Apr. 21, 2021); ***C.C. ex rel. Ginnever v. Suzuki Mfg. of Am. Corp.***, No. 4:16CV01271 ERW, 2018 WL 4504687, at *7 (E.D. Mo. Sept. 20, 2018); ***J.B. ex. rel Bullock v. Mo. Baptist Hosp. of Sullivan***, No. 4:16CV01394 ERW, 2018 WL 746302, at *1 (E.D. Mo. Feb. 7, 2018); ***Campbell v. Garcia***, No. 3:13-cv-0627-LRH-WGC, 2016 WL 4769728, at *6-7 (D. Nev. Sept. 13, 2016); ***Payne v. Wyeth Pharms., Inc.***, No. 2:08cv119, 2008 WL 4890760, at *6-7 (E.D. Va. Nov. 12, 2008). As the court in *Pinkett* reasoned, "while the *scope* of Plaintiff's medical treatment is certainly relevant, . . . 'the price tag of treatment does not tend to prove or disprove anything about the nature and extent of injuries, save what it has cost to treat them.'" 2021 WL 1634565, at *1 (quoting ***Francis v. Nat'l R.R. Passenger Corp.***, 661 F. Supp. 244, 245 (D. Md. 1987)). And although Defendants could perhaps use the medical bills to show scope of treatment, the medical records are better evidence; any probative value to the medical bills is outweighed by their potential to confuse the jury. "The jury may be tempted to treat the medical bills" as definitive proof of the amount of pain and suffering, "rather than to only assess the medical bills as evidence that [plaintiff] experienced pain and suffering." ***Payne***, 2008 WL 4890760, at *7; *see*

*also* ***Pinkett***, 2021 WL 1634565, at *2. "The jury may also be confused by the medical bills' characterization of the treatment [plaintiff] allegedly underwent because the treatment is described in the bills in summary, imprecise terms." ***Payne***, 2008 WL 4890760, at *7.

Accordingly, the portions of Plaintiff's motion in limine seeking to exclude medical bills from evidence, as well as evidence of collateral benefits, are granted.

### *B. Any Testimony or Opinion of Dr. Broghammer that Goes Beyond the Scope of the Written Report (9)*

Plaintiff seeks to exclude any testimony or opinion evidence by Dr. Broghammer that goes beyond the scope of his written report. At the Final Pretrial Conference, Defendants indicated they do not intend for Dr. Broghammer to offer new opinions but noted Dr. Broghammer did not have to replicate his report word-for-word. The parties generally agreed that the expert-disclosure requirements of the Federal Rules of Civil Procedure would be followed, and Plaintiff indicated he would object at trial if he believed Dr. Broghammer strayed too far from his report (and the court could rule upon any objection at that time).

Accordingly, to the extent Plaintiff simply seeks to have Defendants follow the expert-disclosure rules, this portion of Plaintiff's motion in limine is granted.[1]

[1] Plaintiff suggested in his written motion that Dr. Broghammer's failure to sign the July 30, 2021 report should result in its exclusion. Plaintiff did not raise this argument during the Final Pretrial Conference. I do not find the lack of signature subjects opinions in the report to exclusion. *See* **Fed. R. Civ. P. 37(c)(1)** (failure to follow expert-disclosures rules may result in exclusion of the expert opinion "unless the failure was substantially justified or is harmless"); ***Hayes v. S. Fid. Ins. Co.***, No. CV 14-376, 2014 WL 5305683, at *13, *15 (E.D. La. Oct. 15, 2014) (declining to exclude expert opinion contained in unsigned report as rule violation was harmless); ***Frye v. Hanson Aggregates PMA, Inc.***, No. CV 5:04-0650, 2006 WL 5349211, at *3-5 (S.D.W. Va. June 12, 2006) (same).

### *C. Reference to Plaintiff's Failure to Call Witnesses (11)*

Plaintiff moves to exclude reference to any failure to call available witnesses. Defendants respond that at this stage, Defendants have no idea which of the thirty-eight witnesses Plaintiff may not call; but the failure to call a witness could be relevant to whether Plaintiff met the burden of proof. I agree. *See* ***Richardson Int'l (US) Ltd. v. Buhler Inc.***, No. 8:14CV148, 2017 WL 1277814, at *5 (D. Neb. Mar. 31, 2017) (finding premature motion to exclude reference to any failure to call witnesses); ***In re Prempro Prods. Liab. Litig.***, No. MDL 4:03CV1507-WRW, 2007 WL 3217470, at *1 (E.D. Ark. Oct. 26, 2007) (denying motion in limine to exclude references to failure to call available witnesses, noting the motion could be renewed before closing argument, which is the only time the court anticipated the issue coming up; the court noted depending on the circumstances, it could be proper or improper to refer to the non-called witnesses).

Accordingly, I deny without prejudice this portion of Plaintiff's motion in limine. The court will revisit this issue with the parties prior to closing argument.

### *D. Testimony of Undisclosed Witnesses (12) and Undisclosed Documents and Exhibits (13)*

Plaintiff seeks to exclude undisclosed witness testimony and exhibits. At the Final Pretrial Conference, both parties agreed not to present undisclosed witness testimony or exhibits, unless for rebuttal or impeachment purposes. They also agreed that prior to presenting any undisclosed evidence for rebuttal or impeachment purposes, they would raise the issue to the court outside the presence of the jury.

Accordingly, these portions of Plaintiff's motion are granted.

***E. Plaintiff's Tax Returns, Earnings, and Wages (14)***

At the Final Pretrial Conference, Plaintiff clarified that he does not seek to recover lost wages. Thus, Plaintiff argues that evidence of his tax returns, earnings, and wages should be excluded as irrelevant, unfairly prejudicial, and likely to confuse the jury. Defendants argue that Plaintiff's ability to work the same hours and make the same earnings as before the accident is relevant to show his loss of body function (or lack thereof), as well as pain and suffering, citing a Fourth Circuit case. At the Final Pretrial Conference, I took this issue under advisement, but I noted my inclination that this evidence is relevant.

In the Fourth Circuit case relied upon by Defendants, *Deans v. CSX Transportation, Inc.*, 216 F.3d 398, 399 (4th Cir. 2000) (per curiam), plaintiff was barred as a matter of law from recovering lost wages against his railroad employer in a Federal Employer's Liability Act (FELA) case, because sometime after the accident, plaintiff was lawfully terminated. Defendant employer moved in limine to preclude medical expert testimony that plaintiff's injury prevented him from working and caused him to lose future wages and benefits. ***Id.*** at 400. The trial court allowed plaintiff to offer evidence of his inability to continue working, finding it relevant to pain and suffering, and also permitted plaintiff "to present evidence of the fringe benefits he enjoyed while an employee of [defendant]." ***Id.*** The Fourth Circuit affirmed, holding the district court did not abuse its discretion in admitting this evidence. ***Id.*** at 400-01. The court noted plaintiff's "employment and activity limitations as a result of his injury, as well as his loss of certain fringe benefits, are elements of evidence that are relevant to [plaintiff's] pain and suffering." ***Id.*** at 400.

Here, I agree with Defendants that Plaintiff's ability to work and earn the same wages as before the accident is relevant to Plaintiff's loss of body function and pain and suffering, two categories of damages. *Cf.* ***Pigott v. Pigott***, No. 3:05cv480DPJ-JCS, 2007

WL 9778105, at *4 (S.D. Miss. Apr. 9, 2007) (noting "the fact that [plaintiff] held a job after the accident was . . . relevant to her physical condition"). Unlike the amount of medical bills, which may "mask[] the difference in severity between various types of injuries," as "[a] very painful injury may be untreatable,"[2] Plaintiff's earning power better correlates to his loss of body and mind function. Plaintiff's ability to work the same amount as before the accident, and to earn similar wages, is relevant, and I do not find this evidence would be unfairly prejudicial or confusing.

Accordingly, I deny this portion of Plaintiff's motion in limine.

## *II. DEFENDANTS' MOTION IN LIMINE*

### *A. Spencer's Drug Test Results (A)*

Defendants move to exclude evidence of Spencer's drug and alcohol test results from the day of the accident. The accident occurred around 5:12 a.m., and Spencer completed drug testing at the hospital around 10:25 a.m. The urine test result was "dilute negative," and the breath test result was "negative." Plaintiff seeks to argue that Spencer was driving while impaired based on the "dilute negative" drug test and Spencer's failure to submit to a drug test within two hours, as Plaintiff argues is required by the regulations (this regulation is discussed further below). At the Final Pretrial Conference, I took this issue under advisement. After the hearing, Defendants submitted evidence of a second urine drug test from three days after the accident (which was discussed at the hearing); the results were negative. Doc. 57-1.

Defendants argue that the drug-test reports are inadmissible hearsay and lack foundation. "When made on a routine basis, laboratory analyses of controlled substances are admissible as business records under Federal Rule of Evidence 803(6)." ***United***

---

[2] ***Payne***, 2008 WL 4890760, at *6 (quoting ***Carlson v. Bubash***, 639 A.2d 458, 462 (Pa. Super. Ct. 1994)).

***States v. Redd***, 318 F.3d 778, 784 (8th Cir. 2003) (quoting ***United States v. Baker***, 855 F.2d 1353, 1359 (8th Cir. 1988)). Plaintiff explains that Jeremy Wagner, the owner of Defendants Wagner Trucking and Skeeter LLC, can explain the procedures his companies use to conduct post-accident drug testing of drivers. Plaintiff also notes Spencer identified the documents (and did not call the results into question).

Defendants also argue that expert testimony is required to explain the "dilute negative" test result. Defendants argue that without expert testimony, the probative value of the dilute negative result "is substantially outweighed by a danger of . . . unfair prejudice . . . [and] misleading the jury." **Fed. R. Evid. 403**. Defendants argue that without proper explanation from an expert, the jury will be confused about the meaning of the "dilute negative" result and improperly infer that Spencer tampered with the test.

I agree with Plaintiff that expert testimony is not required. As Plaintiff notes, the test report itself explains the meaning of a "dilute negative" test: "The specimen was found to be DILUTE, which usually means the donor was over-hydrated; but sometimes suggest an attempt to invalidate the test." Doc. 46. The risk of unfair prejudice or of misleading the jury, therefore, does not bar admission of the drug-test report without expert testimony.

I do not find, however, that the statement about dilute testing in the drug-test report provides sufficient evidence that Spencer was driving under the influence of alcohol or drugs, especially given the second negative urine drug test result from three days later and the absence of any expert testimony. Thus, at this time, I have not included this theory of negligence in the jury instructions. I also caution Plaintiff—he may not extrapolate on the meaning of the dilute test results beyond what is explained in the report, as such argument would be objectionable.

Accordingly, at this time, this portion of the motion in limine is denied. I am willing to revisit this ruling should Plaintiff offer improper and unsupported argument on the meaning of the dilute test results, however.

### *B. Spencer's Medical History Including Pre-Accident and Post-Accident Medication Use (B)*

Defendants argue that without expert testimony, Plaintiff should be precluded from referring to Spencer's use of legally prescribed naproxen (an NSAID) two days before the accident (which showed up on post-accident drug testing). At the Final Pretrial Conference, Plaintiff confirmed that he does not seek to introduce evidence of Spencer's naproxen use.

Plaintiff does, however, seek to introduce evidence that Spencer obtained a prescription for oxybutynin on November 9, 2017, ten days after the accident. Plaintiff notes that he has disclosed an expert who will testify that oxybutynin is used to treat urinary spasms and incontinence. Plaintiff argues that Spencer's use of oxybutynin "is relevant to whether she was distracted at the time of the crash by needing to urinate, having driven for three hours and consumed a Thermos of coffee." Doc. 46. At the Final Pretrial Conference, the parties disputed whether the oxybutynin prescription was a refill, and Plaintiff indicated he was still working to obtain additional evidence on this issue. Defendants argued that if Spencer was not prescribed the medication until after the crash, the evidence is irrelevant and would only serve to confuse the jury. I took the issue under advisement.

At this time, I decline to exclude evidence of Spencer's oxybutynin prescription. Whether the November 2017 prescription was a refill or not, that Spencer obtained a medication to treat bladder incontinence ten days after the accident is relevant to Plaintiff's theory that Spencer was distracted at the time of the crash by needing to

urinate. If Spencer was first prescribed the medication ten days after the accident, that is close enough in time to suggest that she needed treatment for bladder issues at the time of the accident (but had not yet improved her condition through treatment). Plaintiff could further bolster this theory through evidence that Spencer complained about bladder issues during a Department of Transportation physical in July 2017. And if the medication was indeed a refill, that could still tend to prove Plaintiff's theory that Spencer was distracted at the time of the accident due to bladder-incontinence issues.

Defendants also seek to exclude evidence of Spencer's emergency-room treatment the day after the crash, in which she was prescribed Toradol (an NSAID) and cyclobenzaprine, which is used to treat muscle spasms. Doc. 46. Plaintiff argues that Spencer's post-crash medical history is relevant "because it shows that the force of the crash was sufficient to cause significant injuries to her as the driver of the semi, and thus the force of the crash was sufficient to injure Plaintiff as driver of the pickup that was t-boned by the semi." Doc. 46. Plaintiff also notes that Spencer made "specific admissions in the medical records as to her fault in causing the crash" (both at the emergency room and at her November appointment). Therefore, Plaintiff argues the post-crash medical records are relevant for this reason.

At the Final Pretrial Conference, Defendants suggested that the statements in the medical records are irrelevant hearsay because they were not made "against interest," they are just Spencer's description of the accident. Federal Rule of Evidence 801(d)(2) sets forth the party-opponent hearsay rule:

> (d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay: . . .
> (2) *An Opposing Party's Statement*. The statement is offered against an opposing party and:
> (A) was made by the party in an individual or representative capacity . . . .

"[N]o specific 'against interest' component is required" (that requirement comes from the statements-against-interest hearsay exception for unavailable witnesses under Rule 804). ***Aliotta v. Nat'l R.R. Passenger Corp.***, 315 F.3d 756, 761 (7th Cir. 2003). Accordingly, the post-crash medical records are relevant to the extent they contain Spencer's statements about the accident, which is not considered hearsay under Rule 801.

Also, the post-crash records do seem relevant to show the seriousness of the injuries caused by the accident. I do not find this evidence would be unfairly prejudicial or confusing to the jury, although it may not be as probative as other evidence in showing Plaintiff's injuries from the collision. I decline to exclude it on relevance grounds at this time.

This portion of Defendants' motion in limine is granted in part and denied in part; it is granted to the extent Defendants seeks to exclude evidence of Spencer's naproxen prescription and is otherwise denied.

### *C. Spencer's 2008 Operating While Intoxicated (OWI) Conviction (C)*

Defendants move to exclude evidence of Spencer's 2008 OWI conviction. Plaintiff argues this evidence is relevant to the negligent-hiring claim, which the court dismissed at summary judgment (after the parties filed the motions in limine). Plaintiff also responds that this evidence is relevant to show Spencer's untruthfulness, as she denied ever having her license suspended or revoked on her March 2017 application to work for Wagner Trucking (her license was suspended as the result of the 2008 OWI).

Federal Rule of Evidence 608 provides:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of[] . . . the witness . . . .

**Fed. R. Evid. 608(b)(1)**.[3] Federal Rule of Evidence 609 provides that felony convictions may be used to attack a witness's character for truthfulness, but "if more than 10 years have passed since the witness's conviction[,] . . . . [e]vidence of the conviction is admissible only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." **Fed. R. Evid. 609(a)-(b)**.

Here, more than ten years have passed since Spencer's OWI conviction in 2008. But, Plaintiff does not argue that the OWI conviction, standing alone, renders Spencer "less likely than the average trustworthy citizen to be truthful in [her] testimony." ***United States v. Babb***, 874 F.3d 1027, 1030 (8th Cir. 2017) (quoting ***Davis v. Alaska***, 415 U.S. 308, 316 (1974)). Rather, Plaintiff seeks to impeach Spencer's credibility by asking whether she lied on her employment application in March 2017 when she stated she had never had her driver's license suspended or revoked—a false statement as the result of her OWI. *See* ***Dahl v. Hofherr***, No. 3:14-1734-MGG, 2017 WL 6628334, at *5 (N.D. Ind. Mar. 28, 2017) ("[A]lleged lies on a job application are always relevant to a witness's character for truthfulness."). Courts have held a party may impeach a witness's credibility based on false statements in an employment application, even when those false statements involve criminal convictions that are more than ten years old. *See* ***Schmidt v. Medicalodges, Inc.***, 350 F. App'x 235, 238-39 (10th Cir. 2009); ***United States v. Redditt***, 381 F.3d 597, 600-02 (7th Cir. 2004); ***McGraw v. United Tugs, Inc.***, No. CV 15-394, 2017 WL 11535972, at *1-2 (E.D. La. Oct. 18, 2017); ***Brossette v. Swift Transp. Co.***, No. CV 07-0888, 2008 WL 4809411, at *9 (W.D. La. Oct. 29, 2008).

---

[3] The advisory committee notes to the 2011 amendments note that Rule 608's "limitation of bad-act impeachment to 'cross-examination' is trumped by Rule 607, which allows a party to impeach witnesses on direct examination." **Fed. R. Evid. 608 advisory committee notes to 2011 amendment**.

Here, Spencer's credibility is highly relevant, as the jury will be tasked with determining whether DeBower's or Spencer's version of events is more credible. On the other hand, as this case involves determining who is at fault for a motor vehicle accident, evidence of Spencer's prior OWI conviction creates a danger of unfair prejudice—especially as the parties have agreed that the prior OWI convictions of the other party involved in the accident, DeBower, should be excluded. Balancing the probative nature of the evidence against the danger of unfair prejudice, at this juncture, I find that evidence of Spencer's OWI conviction should be excluded. Plaintiff will be allowed to impeach Spencer's credibility, however, by asking about the employment application and whether Spencer's driver's license has ever been suspended or revoked. I agree with Plaintiff that the nature of Spencer's untruthfulness on the employment application—i.e., that she failed to disclose something related to her ability to drive and perform her job, as opposed to (for example) listing a false address—is highly relevant and outweighs the danger of unfair prejudice. Plaintiff will not be permitted to ask Spencer about *why* her driver's license was suspended or revoked, however—not even in generalities such as whether it was the result of a driving infraction.

Accordingly, this portion of Defendants' motion in limine is granted in part and denied in part.

### ***D. Department of Transportation (DOT) or Federal Motor Carrier Safety Act (FMCSA) Violations (D) and Absence of Signed Lease, Bill of Lading, and Other Documentation (F)***

Defendants seek to exclude evidence of FMCSA and DOT regulations, arguing that any violations are irrelevant and would confuse the jury, particularly because Plaintiff has not offered any expert testimony to explain the regulations. Plaintiff seeks the court to instruct the jury on violations of the FMCSA regulations, arguing that the violations are relevant to Plaintiff's negligent-hiring and supervision claims, which were dismissed

at summary judgment (after the parties filed the motions in limine). At the Final Pretrial Conference, Plaintiff indicated he would introduce the regulations by showing the regulations to witnesses such as Spencer and Wagner and questioning them about their adherence to them.

At the Final Pretrial Conference, Plaintiff agreed that the lack of signed lease, bill of lading, and driver logs were irrelevant given the court's summary-judgment ruling. Accordingly, that portion of Defendants' motion in limine (6) is granted. I took under advisement whether other FMCSA regulations should be excluded (4).

Plaintiff argues Wagner Trucking and Skeeter LLC failed to create an accident report after the accident, in violation of the regulations, *see* **49 C.F.R. § 390.15(b)**. Here, only Spencer's negligence is at issue. As Defendants note, Wagner Trucking and Skeeter LLC's failure to create an accident report after-the-fact did not affect Spencer's behavior or cause the accident or Plaintiff's injuries. But as Plaintiff argues, Wagner Trucking and Spencer LLC's failure to create the accident report could suggest a nefarious intent to "cover-up" the accident and Spencer's fault. Defendants offer no specific evidence for how they would be prejudiced by introduction of the accident-reporting requirements and by allowing Plaintiff to question Wagner regarding that regulation. The regulation appears straightforward. ***See id.***[4] Accordingly, I will not bar

---

[4] The regulation provides:

> (b) Motor carriers must maintain an accident register for 3 years after the date of each accident. Information placed in the accident register must contain at least the following:
>
> > (1) A list of accidents as defined at § 390.5 of this chapter containing for each accident:
> >
> > > (i) Date of accident.
> > > (ii) City or town, or most near, where the accident occurred and the State where the accident occurred.
> > > (iii) Driver Name.
> > > (iv) Number of injuries.
> > > (v) Number of fatalities.

introduction of the accident-reporting regulation (and definition of accident referenced therein, if necessary) at this time.[5]

Plaintiff also seeks to introduce FMCSA regulations on drug- and alcohol-testing, arguing that Spencer's testing did not comply with the regulations because it did not occur within two hours of the accident. The regulations provide that an employer must test its driver for alcohol and controlled substances "[a]s soon as practicable" following an accident in which a driver receives a moving violation, and a vehicle has to be towed from the scene (as here). **49 C.F.R. § 382.303(a)-(b)**. The regulations further provide that if an *alcohol* test is not administered within two hours following the accident, the employer must "prepare and maintain on file a record stating the reasons the test was not promptly administered"; but for a controlled substances test, the recording rule applies only to tests not administered within thirty-two hours. ***Id.* § 382.303(d)(1)-(2)**.

With regard to the drug- and alcohol-regulation, I agree with Defendants that the probative value of this regulation is outweighed by the danger of unfair prejudice and confusing the jury. It appears from Plaintiff's argument that Plaintiff misunderstands the regulation. Thus, without expert testimony, there is a danger that the jury would as well. Plaintiff seeks to rely on the dilute negative test as evidence that Spencer was intoxicated at the time of the crash, but that test was conducted within the time limit provided by the regulations (thirty-two hours for drug tests). In addition, as noted above in the section

---

> (vi) Whether hazardous materials, other than fuel spilled from the fuel tanks of motor vehicle involved in the accident, were released.
>
> (2) Copies of all accident reports required by State or other governmental entities or insurers.

**49 C.F.R. § 390.15(b)**.

[5] As discussed in the summary-judgment order, there is no evidence Wagner Trucking and Skeeter LLC acted in bad faith in failing to produce the report, so as to warrant a spoliation sanction. Accordingly, no jury instruction will be offered on this regulation, and it will be up to Plaintiff to establish the appropriate foundation for the introduction of this evidence.

on drug and alcohol testing, there does not appear to be sufficient evidence that Spencer was intoxicated at the time of the accident, and Plaintiff's attempt to argue otherwise (including by relying on this regulation) risks confusing the jury. I agree that without expert testimony explaining this regulation and what "as soon as practicable" means in practice, this evidence should be excluded.

Finally, to the extent Plaintiff seeks to introduce the broad universe of "any and all FMCSA rules and regulations," I agree that expert testimony would be required to help the jury understand "these incredibly broad and lengthy topics." *See* ***Baham v. Lovorn & Lovorn Trucking, Inc.***, No. CV 18-8881, 2020 WL 2310390, at *2-3 (E.D. La. Mar. 11, 2020) (granting motion in limine to exclude FMCSA regulations in the absence of expert testimony). If Plaintiff has other specific regulations he would like to rely on, he may raise the issue at trial, outside the presence of the jury.

Accordingly, Defendants' motion in limine on FMCSA regulations is granted in part and denied in part. At this time, Plaintiff may offer evidence of the accident-reporting regulation, but no others.

### *E. FMCSA/DOT Investigation Case Number MN-2020-0025-US1689 Against Wagner Trucking (E)*

Defendants move in limine to preclude evidence of FMCSA/DOT investigation case number MN-2020-0025-US1689 against Wagner Trucking. Plaintiff indicates no objection unless Defendants intend to present evidence on or argue their safety rating at trial. At the Final Pretrial Conference, Defendants indicated no intent to offer this evidence.

Accordingly, at this time, this portion of the motion in limine is granted.

### *F. Evidence of Other Litigation Against Defendants (J)*

Defendants seek to exclude evidence of other litigation against them unrelated to

the accident. Plaintiff argues that Spencer's OWI and failure to yield conviction are relevant, but otherwise agrees to exclude evidence of other litigation against Defendants. The OWI is addressed above by a separate motion in limine (3), and Defendants do not seek to exclude the failure to yield conviction.

Accordingly, this portion of the motion in limine is granted.

## *III. CONCLUSION*

Plaintiff's motion in limine (Doc. 43) is **granted in part, denied in part, and denied without prejudice in part**. Defendants' motion in limine (Doc. 44) is **granted in part and denied in part**. Until raised to the court outside the presence of the jury, the parties are prohibited from offering evidence of:

- Medical bills and insurance coverage (Pl. 1)
- Collateral benefits, including disability insurance (Pl. 2)
- Unrelated injuries, accidents, claims, suits, or settlements (Pl. 3; Def. J);
- Plaintiff's receipt or use of damages awarded in a prior action (Pl. 4);
- Unrelated court proceedings, including Plaintiff's Operating While Intoxicated charges in 2001 and 2007 (Pl. 5);
- Testimony and statements as to any party's veracity, credibility, or importance to the community (Pl. 6);
- The comparative fault of nonparties (Pl. 7);
- Any malpractice claim or related proceedings involving Plaintiff's treating physician (Pl. 8);
- Testimony or opinion of Dr. Broghammer that violates the expert-disclosure rules (Pl. 9)
- Any settlement offers (Pl. 10);
- Testimony of undisclosed witnesses (except for impeachment or rebuttal) (Pl. 12)
- Evidence of undisclosed documents and exhibits (except for impeachment or rebuttal) (Pl. 13)
- The filing of the motions in limine (Pl. 15);
- Evidence of Spencer's pre-crash naproxen use (part of Def. B)
- Evidence of Spencer's 2008 OWI conviction (but not that Spencer's license was revoked or suspended) (part of Def. C)

- DOT and FMCSA violations other than the accident-reporting requirements (part of Def. 4D
- FMCSA/DOT Investigation Case Number MN-2020-0025-US1689 against Wagner Trucking (Def. E)
- Absence of signed lease, bill of lading, and other documentation (Def. F)
- Reference to insurance coverage or Defendants' wealth (Def. G);
- Evidence of liability insurance and settlement negotiations (Def. H);
- Evidence or testimony on injuries or damages nor previously disclosed by Plaintiff (including punitive damages) (Def. I).

The court denies without prejudice Plaintiff's motion to exclude reference to Plaintiff's failure to call witnesses (11). This portion of Plaintiff's motion in limine can be revisited prior to closing argument.

**IT IS SO ORDERED** this 28th day of October, 2021.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa